No. 5990.

INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY *v.* SAMUEL S. MOODY.

1. LEASE OF RAILROAD.—Without consent of the Legislature, a railway company can not lease its track, and thereby absolve itself from its obligations to the public.
2. LIMITING LIABILITY.—A clause in a through bill of lading, exempting the carrier "from damages or loss by fire while in depot," made in the State of Tennessee by a connecting road, being illegal in Texas, will not be passed upon in absence of allegation and proof that such limitation was legal where executed.
3. INCOMPETENT BUT IMMATERIAL EVIDENCE.—Where a fact is not disputed, or is well established by competent testimony, the admission of incompetent testimony which is immaterial and which could not have had any influence upon the jury, is no cause for reversal.

APPEAL from Bexar. Tried below before the Hon. George H. Noonan.

*Shook & Dittmar* and *T. T. Vanderhoeven,* for appellee:
There is no allegation in appellant's answer that it was lawful
in Tennessee to restrict a common carrier's liability as done in
that bill for the Nashville & Chattanooga Railroad Company.

There is no proof that in the State of Tennessee restrictions
of that kind were lawful, nor is there any admission by appel-
lee that such restriction was lawful in that State. (Ryan v.
R'y, 65 Texas, 15, and the following pages; Redfield on Car-
riers, sec. 552–561; 2 Redfield on Railways, 3 ed., 244; Moulton
v. Railroad, 31 Minn., 85; Coward v. Railroad, 16 Lea, 226, and
Code M. & V., secs. 1535–1548; Railway v. Simpson, 30 Kan.,
645; Southern Express Co. v. Moon, 39 Miss., 822; Railroad v.
Abels, 60 Miss., 1017; U. S. Express Co. v. Bachnan, 28 Ohio,
144; Black v. Goodrich Trans. Co., 55 Wis., 319.)

*H. E. Barnard* for appellant.

1. The bill of lading being a through bill from Nashville, Ten-
nessee, to Austin, Texas, the parties to same were not inhibited
by the statutes of Texas from, by contract, limiting the com-
mon law liability imposed upon the common carrier in any
manner they deemed proper; and the stipulations and limita-
tions contained in this bill, to the effect that the contracting
carrier should be exempt from any loss or damage by fire to
that property while same should be at depots, were valid and
binding upon the parties. (Ryan & Co. v. M. K. & T. R'y Co.,
65 Texas, 13–16; Revised Statutes, art. 278; B. & F. M. Ins.
Co. v. G. C. & S. F. R'y Co., 63 Texas, 475; H. & T. C. v.
Park, White & Willson's Con. Rep., secs. 334, 335; M. P. R'y Co.
v. Harris, W. & W. Con. Rep., secs. 1259, 1260; Heaton &
Bro. v. Morgan's L. & T. R. R. & S. S. Co., Id., sec. 774; Tex.
& Pac. R'y Co. v. Davis, W. & W. Con. Rep., secs. 191–196;
N. & C. R. R. Co. v. Jackson, 6 Heiskell (Tenn.), 271; Kiff v.
A. T. & S. F. R. R. Co., 18 Am. & Eng. R'y Cas., 618.)

2. The lessee and not the lessor, if any one, is responsible.
(Mo. Pac. R'y v. Watts, 63 Texas, 553; Hicks v. I. &. G. N. R.
R. Co., 62 Texas, 38; Cunningham v. I. & G. N. R. R., 51 Texas,
509; Bailey v. Troy & Bos. R. R. Co., 52 Amer. R., 129; Ma-
honey v. Atlantic, etc., R. R. Co., 63 Maine, 68; Singleton v.
S. W. R. R. Co., 70 Ga., 464; St. Louis, etc., R. R. Co. v. Curl,
28 Kansas, 622.)

3. The car and depot when burned, were in the possession

and control of the lessee, and there is no testimony to any connection by appellant with the lost freight burned at the depot. (Altgelt v. Brister, 57 Texas, 432; Williams v. Davidson, 43 Texas, 2; Hardy v. De Leon, 5 Texas, 211; Wells v. Barnett, 7 Texas, 584; Crozier v. Kirker, 4 Texas, 252; McGreal v. Wilson 9, Texas, 426.)

HOBBY, JUDGE. The plaintiff in the court below, recovered a judgment against the International & Great Northern Railroad Company for the destruction by fire of a car load of fruit trees and shrubbery, at the depot of said company, in Austin, Texas, to which point it was transported by defendant, and consigned to plaintiff, in November, 1884.

It was urged by the appellant, under the fourth and fifth assignments of error, that "the evidence showed, that the International & Great Northern Railroad was leased to the Missouri Pacific Railway Company in June, 1881, and which latter company operated and controlled as lessee, the International & Great Northern Railroad, and hauled the car of trees over the road bed owned by the International & Great Northern Railroad Company; that the burned depot was the property of the latter, and that there was no evidence showing that the International & Great Northern Railroad Company had anything to do with the damage."

If the evidence in the case before us sufficiently established the fact of a lease, we do not think the assignment of error well taken.

The doctrine is now established in this State, that in the absence of authority conferred by statute, one railroad company can not lease its road to another so as absolve itself from its obligations to the public.

It has been well said that railway companies voluntarily assume duties to the State and the public which they can not relieve themselves from by voluntarily surrendering the management and control of their roads to other persons, in the absence of some law permitting this to be done. Every railroad company in this State is liable for the acts of all persons to whom it confides the management and control of its road, as fully as though operated under the immediate control of the agencies provided by its charter. (Ry. Co. v. Underwood, 67 Texas, 593; Woodhouse v. Ry. Co., 67 Texas, 420; Ry. Co. v. Morris & Crawford, 68 Texas, 59.) There is no general law of

the State authorizing such lease, and if a private act was relied upon, it was neither alleged nor shown in this case.

The trees were purchased by appellee from I. I. Newson, proprietor of the Grand Central Nursery, in Nashville, Tennessee. They were shipped by Newson as agent of and under instructions from appellee to the latter in Austin, Texas, on November 4, 1884. Newson prepaid the freight and charges, amounting to one hundred and forty-five dollars and fifty cents, as appellee's agent. The bill of lading, or shipping contract, is dated at Nashville, Tennessee, November 4, 1884, and provided for the transportation of the trees to appellee, at Austin, Texas, and contained a stipulation exempting the Nashville & Chattanooga Railroad Company, contracting carrier, "from damage or loss by fire while in depots," provided for the transportation of the trees over the line of this road to Union City, and stipulated that the responsibility of this road should cease as a common carrier at the station where delivered for forwarding.

Appellant insists that, as the bill of lading was in evidence, on which the damaged trees were transported from Nashville, Tennessee, to Austin, and that as it contained a clause "loss or damage by fire while in depot, etc., excepted," the court erred in refusing charge number one asked by defendant to the effect that "if the jury should find that the trees were damaged or destroyed by fire while in a car standing upon the railroad track at Austin, and believed that they were shipped upon a through contract, which exempted the Nashville & Chattanooga Railroad Company from all damage, which should be the result of fire at the depots while the trees and shrubs were in transit upon that road, then the same contract enured to the benefit of each railroad company which transported them, and plaintiff could not recover unless such fire was caused by the negligence of agents of the defendant."

If we were permitted by any known rule of law to indulge the presumption that the limitation of the liability of the common carrier stipulated for in the bill of lading was lawful under the statutes of the State of Tennessee, it might then become necessary for us to determine, in this case, whether the law of the place of the contract would govern, rather than the law of our own State, under which such limitation of the carrier's liability would be invalid. (Rev. Stats., art. 278; R'y Co. v. Burke, 55 Texas, 332; Arnold v. Jones, 26 Texas, 337.)

If the law of Tennessee gave to the shipping contract the effect contended for, it should have been alleged and proven. (Porcheler v. Bronson, 50 Texas, 561.)

This charge could only have been given upon the theory that the law presumed the limited liability stipulated for in the bill of lading by the carrier was lawful under the statutes of the State of Tennessee.

There was neither averment nor proof made or offered by appellant to show that such stipulation was not in contravention of the laws of that State. It is not, then, incumbent upon us to decide whether, if such allegation and proof had been made, this limitation of the common carrier's liability would have inured to the benefit of each connecting line, appellant's among them. It is sufficient for the disposition of this assignment, to say that there was no proper plea or proof made by the appellant upon which such an instruction could have been predicated. And we think the court did not err in refusing it.

The action of the court in overruling the objection of appellant to the introduction in evidence of a letter from Newson to appellee is made the basis of an assignment of error.

It appears from the record that the witness Newson, who testified for the plaintiff by deposition, in answer to a cross interrogatory, referring, it seems, to his business dealings with the plaintiff, stated that "he advised plaintiff of the shipment by letter," and attached the letter to his answer. We are unable to see that the letter establishes any other fact than that he "had sent a nice lot of trees." There was no controversy as to the fact that plaintiff purchased the trees from Newson; nor was it disputed that, when sent, they were in good condition and marketable. By no reasonable construction could the letter objected to have tended to prove anything else. We do not think the admission of it error in this case, and if it was, we are of opinion that it was at most a harmless error, which did not affect the result of the case.

It is also complained that the court erred in admitting, over the appellant's objection, the statement of the witness Patterson, as follows: "I told Mr. Moody at the time that I would not have the whole lot. I saw one party receive his trees, but I think he was scared into taking them."

The only effect this evidence could have had was to show that the trees received by plaintiff were damaged or worthless.

This fact was testified to positively by several witnesses, and among them was appellant's witness, Evans. It did not affect the verdict. Appellee's and Newson's testimony fixed the value of the trees at eight thousand five hundred and nineteen dollars and six cents. Appellee testified that "he received trees amounting in value to nine hundred dollars; that not one-fourth of the latter were good trees or of any value." This would have placed his actual damage at about eight thousand dollars, and at which sum he estimated it. The verdict of the jury was for five thousand dollars.

We are of opinion that there is no error in the record requiring a reversal of the cause, and that the judgment should be affirmed.

*Affirmed.*

Opinion adopted October 30, 1888.

STAYTON,
*Chief Justice*